## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 18-cr-30023** |
| | ) | |
| **CHRISTOPHER HARRIS,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>OPINION</u>

**SUE E. MYERSCOUGH, U.S. District Judge:**

Before the Court are Defendant Christopher Harris' Motion to Dismiss or Alternatively Transfer Venue to the United States District Court for the District of Arizona (d/e 40), Motion to Dismiss Indictment for Violation of Sixth Amendment Speedy Trial Right (d/e 42), and Motion to Suppress Unduly Suggestive Identification (d/e 41).  For the reasons set forth below, the Court DENIES Harris' motions.

## I. BACKGROUND

The Government alleges that in January 2017, Angelica Perez, a co-conspirator, met with Defendant on numerous occasions in Quincy, Illinois to carry out a conspiracy to distribute and transport

a mixture or substance containing a detectable amount of methamphetamine.  <u>See</u> Response, d/e 53, p. 2.  The first meeting occurred on January 7, 2017, which was prompted by Defendant texting Ms. Perez about meeting with her to give money to place on the jail account of Ms. Perez's boyfriend, Phillip Mayfield.  <u>Id.</u>  Mr. Mayfield was incarcerated at the Adams County Jail awaiting trial for an unrelated state offense.  <u>Id.</u>  Defendant and Ms. Perez met at the Microtel Hotel in Quincy, Illinois, on the morning of January 7, 2017.  <u>Id.</u>  Defendant provided Ms. Perez with $100 for Mr. Mayfield's jail account, which Ms. Perez placed in the account after the meeting.  <u>Id.</u>

Later in the day on January 7, 2017, the Government alleges that Defendant met with Ms. Perez at her home in Quincy, Illinois to "discuss Ms. Perez driving from Illinois to Arizona to pick up a package from Defendant and bring it back to Illinois.  Ms. Perez understood that the package would contain controlled substances. She agreed with Defendant to do so."  <u>Id.</u> at 3.  The Government also alleges that Defendant and Ms. Perez met for a third time on January 10, 2017, to discuss the details of the conspiracy.  The Government contends that Defendant and Ms. Perez "agreed that

Ms. Perez would drive from her home in Quincy, Illinois to a

location, designated by Defendant, in Arizona for the purpose of

bringing a package of controlled substances back to Quincy,

Illinois.  Defendant would pay her $5,000 to bring the drugs back

and would pay for her expenses."  Id.  Further, Defendant suggested

that Ms. Perez recruit another person to help Ms. Perez complete

the trip without needing to stop so Ms. Perez recruited Amanda

Jaco, a resident of Missouri and co-worker of Ms. Perez at Illinois

Veterans Home in Quincy, Illinois.  Id.  Defendant and Ms. Perez

continued to discuss the details of their conspiracy between

January 10 and January 18, 2017.  Id. at 4.

On January 17, 2017, Ms. Perez left her home in Quincy,

Illinois and picked up $7,000 from Defendant's sister in Hannibal,

Missouri.  Id.  Ms. Perez then met Ms. Jaco at Ms. Perez's home and

left for Arizona around midnight.  Id.  The two arrived at the

Staybridge Suites in Glendale, Arizona around midnight on January

19, 2017.  Id.  Defendant arranged and paid for that hotel room.  Id.

Defendant met Ms. Perez and Ms. Jaco at the hotel room

approximately an hour later.  Id.  After a brief discussion,

Defendant took Ms. Perez's keys, left the room, and returned shortly

after.  Ms. Perez believes that Defendant was placing the controlled substances in her trunk.  Id.  After returning to the room, Defendant discussed the return trip and stated that he was going to take a flight back to Illinois to retrieve the package from them at Ms. Perez's home in Quincy, Illinois.  Id.  On January 19, 2017, Ms. Perez and Ms. Jaco left the hotel room to begin their return trip to Quincy, Illinois.  Id. at 5.  However, shortly after leaving the hotel room, their vehicle was stopped by law enforcement in Apache County, Arizona.  Id.  A search of the vehicle with consent was completed, and 4,994 grams of methamphetamine and 454 grams of cocaine were discovered in a package in the trunk.  Id.; Motion, d/e 40, p. 4.  Thereafter, Ms. Perez and Ms. Jaco were arrested in Apache County for possession of dangerous drug/sale/transport in violation of the laws of Arizona.  See Motion, d/e 40, p. 4.

At the time of that arrest, Defendant was a resident of and domiciled in the State of Arizona.  See Motion, d/e 40, p. 5.

On June 7, 2017, an indictment was filed against Ms. Perez and Mr. Mayfield in the Central District of Illinois for conspiring to possess with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine

and to possess with intent to distribute 280 grams or more of a mixture or substance containing cocaine base in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A)(iii), (b)(1)(A)(viii), and (b)(1)(C) in United States v. Perez, et al., case no. 17-cr-30036.  See Indictment, d/e 1, case no. 17-cr-30036.  On March 6, 2018, a superseding indictment was filed alleging the same conspiracy, but adding six new counts against Mr. Mayfield for using a communication facility to facilitate a drug felony.  See Superseding Indictment, d/e 33, case no. 17-cr-30036.  Ms. Perez ultimately pled guilty and agreed to cooperate against Mr. Mayfield.  Mr. Mayfield pled not guilty and was acquitted by a jury.

On September 27, 2017, Inspector Hiland, a member of the West Central Illinois Drug Task Force, met with Ms. Perez to conduct an interview.  See Response, d/e 54, p 3.  During the interview, Ms. Perez stated that when Defendant originally contacted her on January 7, 2017, he was identified as "Pacman." She stated that she learned his name was Christopher Harris when he sent her the January 19, 2017 hotel confirmation, which had his name on it.  Id. at 4.  After Ms. Perez had informed Inspector Hiland that she had met Defendant on at least four occasions and knew

his name to be Christopher Harris, Inspector Hiland showed Ms. Perez a photograph of Defendant from his Arizona Driver's License. Id.; Motion, d/e 41, p. 2.  The photograph did not contain Defendant's name.  See Response, d/e 54, p. 4.  After viewing the photograph, Ms. Perez confirmed that the photograph was of the individual she knew as Christopher Harris or Pacman.  Id.  Ms. Perez later confirmed her identification while testifying in front of a grand jury on May 1, 2018.  Id.

On May 2, 2018, a grand jury returned an indictment against Defendant Christopher Harris in the Central District of Illinois for conspiracy to possess with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine substance, and, as part of the conspiracy, Defendant made arrangements with other conspirators to transport 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine from Arizona to Illinois for distribution in violation of 21 U.S.C. §§ 846, 841(a)(1), and (b)(1)(A)(viii).  See Indictment, d/e 1.  No other co-conspirators, including Ms. Perez and Mr. Mayfield, were named in the indictment.  On November 6, 2018, Defendant was arrested on the

instant charge.  On August 20, 2019, the Government filed a
superseding indictment, which added special findings pursuant to
21 U.S.C. § 851, but the charges remained the same.  <u>See</u>
Superseding Indictment, d/e 27.

## II. ANALYSIS

### A.  Venue Is Proper in the Central District of Illinois.

Defendant argues that venue in the Central District of Illinois
violates the Constitution, and asks the Court to dismiss the case
pursuant to Federal Rules of Criminal Procedure 18 and 12(3)(A)(i).
Alternatively, Defendant argues that the Court should transfer the
case to the United States District Court for the District of Arizona
pursuant to Rule 21(b).

Article III of the Constitution requires that criminal trials be
held in the state where the crime was committed.  Art. III § 2 cl. 3.
Further, the Sixth Amendment provides that criminal prosecutions
must proceed in "the State and district wherein the crime shall have
been committed."  U.S. Const. amend. VI.  "The Federal Rules of
Criminal Procedure provide for the practical application of this
guarantee by providing that 'the prosecution shall be had in a
district in which the offense was committed.'"  <u>United States v.</u>

Muhammad, 502 F.3d 646, 651 (7th Cir. 2007) (quoting Fed. R. Crim. P. 18.).  "[B]ecause venue is not an element of the offense, the Government has the burden of establishing venue by a preponderance of the evidence rather than by the higher standard of beyond a reasonable doubt." Muhammad, 502 F.3d at 652.

Defendant is charged with conspiracy to distribute and transport a mixture or substance containing a detectable amount of methamphetamine.  To prove the crime of conspiracy to distribute methamphetamine the government must prove: "(1) two or more people agreed to commit an unlawful act, and (2) the defendant knowingly and intentionally joined in the agreement." United States v. Cooper, 767 F.3d 721, 727 (7th Cir. 2014).  The crime of conspiracy is committed wherever the agreement takes place, even if no overt action is taken.  United States v. Shabani, 513 U.S. 10 (1994).  For a continuing crime like conspiracy, Congress has determined that venue is proper in any district in which the offense began, continued, or completed.  18 U.S.C. § 3237(a); United States v. Ochoa, 229 F.3d 631, 636 (7th Cir. 2000) ("[T]he traditional rule is that a conspiracy charge may be tried in any district in which an overt act of the conspiracy occurred."); United States v. Gonzalez,

683 F.3d 1221, 1225 (9th Cir. 2012) ("To determine whether venue is proper we ask not whether all of the elements of a conspiracy were committed in the district of venue, but rather, whether a conspirator committed an act in furtherance of the conspiracy in that district.").

Here, Defendant argues that venue is only proper in the District of Arizona because Defendant's domicile is in Arizona, and because the operative facts upon which the offense is buttressed occurred in Arizona.  Motion, d/e 40, p. 2.  However, this argument only supports a finding that venue may be permissible in the District of Arizona, not that it is impermissible in the Central District of Illinois.  The Government alleges that the conspiracy began in this district when Defendant had an in-person meeting with Ms. Perez and discussed the details of the conspiracy. Further, the Government alleges that multiple communications regarding the conspiracy were directed into this district by Defendant, and the recruitment of a co-conspirator, Ms. Jaco, occurred in this district.

These allegations, if proved by a preponderance of the evidence, are sufficient to establish venue.  Other circuits have

found that merely conducting communications with someone located in the relevant district, without ever being physically present in the district and without even being the one who places the call, is sufficient to establish venue.  United States v. Gonzalez, 683 F.3d 1221, 1225 (9th Cir. 2012); United States v. Rommy, 506 F.3d 108, 122 (2d Cir. 2007) ("What is determinative of venue . . . is whether the conspirator used the telephone call to further the objectives of the conspiracy.").  See also, Andrews v. United States, 817 F.2d 1277, 1279 (7th Cir. 1987) (finding venue was constitutional where defendant was convicted of using the telephone to facilitate distribution of cocaine and he was tried in the district the call originated from when he was aware that the call originated from that district, even though he was never physically present in that district).  Here, not only does the Government allege that Defendant conducted communications with a co-conspirator within the district regarding the conspiracy, but the Government alleges that Defendant was also physically present and met with co-conspirators in furtherance of the conspiracy.  Assuming the Government will be able to prove these allegations by a preponderance of evidence at trial, venue is constitutionally

permitted in the Central District of Illinois.  Defendant's motion to dismiss the indictment is, therefore, denied with leave to reinstate if Defendant believes the Government has not met its burden at trial.

Alternatively, Defendant requests a transfer of venue. Pursuant to Rule 21(b), the Court has discretion to "transfer the proceeding, or one or more counts, against that defendant to another district for the convenience of the parties, any victim, and the witnesses, and in the interest of justice."  Fed. R. Crim. 21(b); United States v. Morrison, 946 F.2d 484, 489 (7th Cir. 1991). When deciding whether to transfer a criminal case, the Court considers the factors set forth in Platt v. Minnesota Min. & Mfg. Co., 376 U.S. 240, 84 S. Ct. 769 (1964), which include: "the location of the defendant and possible witnesses, to disruption of the defendant's business unless the case is transferred, to the expenses which might be incurred by the parties, the location of counsel, and accessibility of the place of trial, to the docket conditions in the districts involved as well as other special considerations."  United States v. Jordan, 223 F.3d 676, 685 (7th Cir. 2000) (citing Platt, 376 U.S. at 245-46).  Defendant does not need to show compelling circumstances, rather, "[i]t is enough if, all relevant things

considered, the case would be better off transferred to another district." <u>Matter of Balsimo</u>, 68 F.3d 185, 187 (7th Cir. 1995).

Defendant's Motion does not explicitly comment on these factors, but does mention that Defendant's home state is Arizona and that the traffic stop leading to the arrest of co-conspirators occurred in Arizona.  However, the Government contends that the majority of the witnesses are located either in the Central District of Illinois (including Ms. Perez and law enforcement officers), are located closer to the Central District of Illinois than they are to Arizona (including Ms. Jaco), or would require travel to whichever district the case is tried in for the purposes of authenticating documents.  The Government foresees only two potential witnesses being called from Arizona: the arresting officer of Perez and Jaco, and the forensic analyst who tested the methamphetamine and cocaine at issue.  Moreover, while events relevant to the conspiracy took place in Arizona, relevant events are also alleged to have taken place in Quincy, Illinois.  Notably, the Government alleges that Defendant met with co-conspirators in Quincy, Illinois, that Defendant conducted communications in Quincy, Illinois, and that the drugs were intended to be distributed in Quincy, Illinois.

Counsel for both parties are in the Central District of Illinois.  The
Court also considers the fact that matters related to this conspiracy
have already been heavily litigated in this district.

While venue may be permissible in the District of Arizona, the
Court finds that the <u>Platt</u> factors do not favor transfer of the case
and that transfer of the case would not be in the interests of justice
under Rule 21(b).  Accordingly, the Court denies Defendant's
Motion to Dismiss or Alternatively Transfer Venue (d/e 40).

### B.  Defendant's Six Amendment Speedy Trial Right Was Not Violated.

Defendant filed a motion to dismiss the indictment arguing
that his Sixth Amendment speedy trial right was violated.  When
assessing a speedy trial claim, a court should consider the following
factors: "[l]ength of delay, the reason for the delay, the defendant's
assertion of his right, and prejudice to the defendant."  <u>Barker v.
Wingo</u>, 407 U.S. 514, 530 (1972); <u>see</u> <u>also</u>, <u>Doggett v. United States</u>,
505 U.S. 647, 651 (1992) (stating factors to consider are "whether
delay before trial was uncommonly long, whether the government or
the criminal defendant is more to blame for that delay, whether, in
due course, the defendant asserted his right to a speedy trial, and

whether he suffered prejudice as the delay's result.").  Different reasons for delay should be given different weights:

> A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

Baker, 407 U.S. at 530.

Defendant complains that the Government delayed in bringing charges against him and arresting him when the Government knew of Defendant's alleged involvement in the Mayfield/Perez conspiracy as early as March 2017.  The Government did not obtain an indictment against Defendant until May 2018, and Defendant was not arrested until November 2018.  Defendant argues that the delay between the Government knowing about his alleged involvement and his arrest violates his speedy trial right.

However, being investigated for a crime does not start the speedy trial clock.  United States v. Richardson, 780 F.3d 812, 813 (7th Cir. 2015) ("Someone who is only the target of a criminal investigation has no right to have the government wrap up its

investigation quickly and bring charges, even if the target is aware of the investigation."). Defendant's speedy trial right did not start until he was formally accused. United States v. Clark, 754 F.3d 401, 405 (7th Cir. 2014) ("The Sixth Amendment speedy trial right, from which the Speedy Trial Act draws its substance, applies only to persons who are formally accused of a crime."). The filing of an indictment triggers a defendant's Sixth Amendment speedy trial right. Id. at 815 (stating that "arrest [provided the person arrested isn't immediately released], indictment, or other official accusation" triggers the right). In this case, the delay between the indictment in May 2018 and Defendant's arrest in November 2018 amounted to six months. The Court finds that the length of the delay was not great nor prejudicial to Defendant and did not infringe on his Sixth Amendment speedy trial right.

The Court also notes that the delay from Defendant's arrest to his pending trial date are a result of continuations requested by Defendant. Defendant did not assert his speedy trial right until July 2020. Such actions are taken into consideration as one of the factors and weighs against Defendant. See United States v. Allen, 664 Fed. Appx. 574, 577 (7th Cir. 2016) ("Just as we give significant

weight to the defendant's assertion of the right, a failure to assert it will make it difficult for a defendant to prove that he was denied a speedy trial.").

The Court finds that Defendant has failed to prove that his Sixth Amendment speedy trial right was infringed and denies his Motion to Dismiss (d/e 42).

**C.  The Identification of Defendant Was Not Unduly Suggestive.**

Defendant argues that Ms. Perez's identification of him on September 27, 2017, was unduly suggestive and should be suppressed.  A witness's identification of a defendant violates a defendant's due process rights "when the identification procedure is so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."  Lee v. Foster, 750 F.3d 687, 691 (7th Cir. 2014) (quoting United States v. Recendiz, 557 F.3d 511, 524 (7th Cir. 2009)).  To determine whether an identification should be suppressed as a violation of due process, the Court applies a two-step inquiry.  First the Court considers "whether the identification procedure used by law enforcement was 'both suggestive and unnecessary.'"  United States v. Sanders, 708

F.3d 976, 983–84 (7th Cir. 2013) (citing <u>Perry v. New Hampshire</u>,
132 S. Ct. 716, 724 (2012)).  If the Court determines that the
identification fails the first prong, the Court next examines "the
"totality of the circumstances" to determine whether other indicia of
reliability 'outweigh[ ] ... the corrupting effect of law enforcement
suggestion.'"  <u>Id.</u>

The procedure used here was unnecessary, but not unduly
suggestive.  Ms. Perez was only shown a single photograph of
Defendant and asked whether the individual was her co-
conspirator.  The use of a single photograph as opposed to a
photograph array was not necessary, and the Government does not
argue otherwise.  Defendant argues that the procedure was also
unduly suggestive.  A show-up procedure, whereby the police
present a single person to the victim or witness of a crime, has
repeatedly been condemned in caselaw as inherently suggestive.
<u>See</u>, <u>e.g.</u>, <u>United States v. Gonzalez</u>, 863 F.3d 576, 584 (7th Cir.
2017) (collecting cases); <u>Stovall v. Denno</u>, 388 U.S. 293, 302, 87 S.
Ct. 1967, 1972 (1967) (noting that the practice is "widely
condemned"); <u>United States v. Funches</u>, 84 F.3d 249, 254 (7th Cir.
1996) ("A show-up is inherently suggestive because the witness is

likely to be influenced by the fact that the police appear to believe the person brought in is guilty, since presumably the police would not bring in someone that they did not suspect had committed the crime.").  However, the Seventh Circuit has not addressed whether a photographic show-up, rather than an in-person show-up presents the same problem.  See United States v. Sanders, 708 F.3d 976, 984 (7th Cir. 2013) (reserving this question).  But, here, the suggestiveness of the photograph identification is further diminished.  Ms. Perez was not identifying a stranger she had only briefly seen.  Rather, Ms. Perez was identifying her co-conspirator after sharing that she had met him multiple times and knew his name.  There is no indication that Ms. Perez would have been suggestable in such a way that she would be likely to make an incorrect identification.

Moreover, even if the procedure could be described as unduly suggestive, the identification was sufficiently reliable.  The Court looks to the following factors to determine whether an unduly suggestive identification was reliable under the circumstances: "(1) the opportunity of the witness to observe the criminal at the time of the crime (or prior to the identification); (2) the witness's degree of

attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the time of the identification; and (5) the length of time between the crime and the identification." Lee v. Foster, 750 F.3d 687, 692 (7th Cir. 2014) (citing Neil v. Biggers, 409 U.S. 188, 199–200, 93 S.Ct. 375 (1972)).

Defendant has not articulated what he believes makes Ms. Perez's identification unreliable under these factors, and the Court finds that the identification was reliable.  Unlike most challenged identifications, Ms. Perez was not making an identification of a stranger she had seen during a quick interaction.  Prior to making the identification, Ms. Perez had alleged that she had the opportunity to meet Defendant four times for significant periods of time.  She alleged she met Defendant at the Microtel Hotel in Quincy, Illinois, on the morning of January 7, 2017, and later that day at her home.  She also alleged that she met with Defendant on January 10, 2017, to discuss the conspiracy.  Finally, she alleged she met Defendant on January 19, 2017, in a hotel room he had arranged in Arizona.  She alleges that he stayed with her for a total of approximately a half an hour in the hotel room, a small well-lit

space.  Ms. Perez also provided Defendant's name prior to being shown the photograph.  Moreover, Ms. Perez did not waver in her identification.  On this record, the Court finds the identification sufficiently reliable to go to a jury and denies Defendant's Motion to Suppress (d/e 41).

### III. CONCLUSION

For the reasons above, Defendant Christopher Harris' Motion to Dismiss or Alternatively Transfer Venue to the United States District Court for the District of Arizona (d/e 40) is DENIED with leave to reinstate at trial after the Government rests.  Defendant's Motion to Dismiss Indictment for Violation of Sixth Amendment Speedy Trial Right (d/e 42), and Motion to Suppress Unduly Suggestive Identification (d/e 41) are DENIED.


**ENTERED: June 15, 2021.**
**FOR THE COURT:**

 **s/ Sue E. Myerscough**
 **SUE E. MYERSCOUGH**
 **UNITED STATES DISTRICT JUDGE**